UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION
CIVIL ACTION NO. 6:16-CV-109-GFVT

| | |
|---|---|
| DR. JAMES TAYLOR ) <br> MRS. DINAH TAYLOR, ) <br>    ) <br>    Plaintiffs, ) <br>    ) <br> v.   ) <br>    ) <br> UNIVERSITY OF ) <br> THE CUMBERLANDS, ) <br>    ) <br>    Defendant. ) | *Electronically Filed* |

## DEFENDANT'S REPLY IN FURTHER SUPPORT OF
## MOTION TO EXCLUDE EXPERT TESTIMONY OF A. W. (PETE) SMITH

Defendant University of the Cumberlands (the "University"), by and through counsel, hereby submits this Reply in Further Support of its Motion to Exclude Expert Testimony of A.W. (Pete) Smith (the "Motion") and in support thereof states as follows:

Dr. and Mrs. Taylor misguidedly focus the bulk of their Response to the Motion on certain alleged deficiencies in the opinions of the University's compensation expert, Phillip Blount. Not only do Dr. and Mrs. Taylor mischaracterize the circumstances surrounding the University's retention of Blount prior to the filing of this lawsuit, and the University's position regarding the Disputed Agreement, but their focus on Blount's opinions, rather than Smith's, is misplaced--the Motion relates only to the latter. Blount's opinions—which, notably, Dr. and Mrs. Taylor have *not* sought to exclude or limit through a *Daubert* motion—are completely irrelevant to whether Smith has provided the necessary justification to demonstrate that his opinions are reliable and not mere speculation.

Stripped of its irrelevant arguments and mischaracterizations, Dr. and Mrs. Taylor's Response ignores an important deficiency in Smith's opinions: he has failed to provide sufficient bases for them, relying instead only on false assumptions, unsupported speculation, and flawed or unsupported methodologies. This failure condemns Smith's opinions under Federal Rule of Evidence 702(a) and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-93 (1993). Expert testimony that is not based on sufficient facts or data, or that is not the product of reliable principles and methods that have been reliably applied, is not admissible. Because Dr. and Mrs. Taylor have not established the admissibility of Smith's expert testimony by a preponderance of proof, it should be excluded.

## ARGUMENT

### I. Dr. and Mrs. Taylor Mischaracterize The University's Position Regarding The Disputed Agreement and Phillip Blount's Opinions.

Dr. and Mrs. Taylor erroneously attempt to defend Smith's opinions by arguing that they were procured to address the fact that the University used Blount's opinions "to railroad the special subcommittee of the University Board of Trustees' Executive Committee to terminate the Disputed Agreement" and because "the University's chief concern . . . was whether the Disputed Agreement violated the Internal Revenue Service's ('IRS') Excess Benefit Transaction rules." (DE 80 at 1-2). Not only does this have no effect on the University's arguments regarding whether Smith's opinions should be excluded as unreliable and speculative, but it mischaracterizes the facts and the University's position. The University did not use Blount's January 6, 2016 report (the "2016 Blount Report") as a basis for terminating the Disputed Agreement. The University has at all times taken the position that the Disputed Agreement is unenforceable, both because it lacks consideration and because it was not properly authorized by the University's Board of Trustees, and these have always been the "chief concerns" of the

University in relation to the Disputed Agreement.[1] The Board obtained the 2016 Blount Report, which considered what would be reasonable compensation for Dr. Taylor in the new part-time position of Chancellor, in deciding in what capacity Dr. Taylor would be employed by the University after stepping down as President in October 2015 and what he should be paid.

Of course, the University was concerned that continuing to pay Dr. and Mrs. Taylor the same amounts that they were being paid while Dr. Taylor was President after he stepped down, as he was demanding, would not be considered reasonable for his limited, part-time role of Chancellor. As any other responsible board of trustees mindful of its fiduciary duties would do, the University's Board sought to take advantage of the rebuttable presumption of reasonableness in the IRS regulations by obtaining an independent opinion regarding what would be reasonable compensation for Dr. Taylor as Chancellor. Dr. and Mrs. Taylor baselessly seek to minimize the importance of the IRS rules regarding excess benefit transactions and cast the University as imprudent for taking steps to abide by them. They suggest, without citing any authority, that these rules only apply to "closely controlled non-profits operated for the benefit of their founders with no real charitable purpose," even though the code expressly applies to "*any* organization which (without regard to excess benefit) would be described in [26 U.S.C. §501(c)] and exempt from tax under [26 U.S.C. § 501(a)]." (DE 80 at 3); 26 U.S.C. § 4958(e) (emphasis added). Indeed, these rules regarding excess benefit transactions are widely recognized as important constraints on non-profit executive pay that must be respected and carefully considered—even Smith's own website acknowledges this, noting that the "[f]ailure to follow these [regulations]

---

[1] Dr. and Mrs. Taylor blame the rules regarding excess benefit transactions for what they call "sudden memory trouble" on the part of members of the University's Board of Trustees. But, as explained in the University's Motion for Summary Judgment, numerous members of the Board of Trustees stated—without any indication of "sudden memory trouble"—that the Disputed Agreement was never presented to, considered by, or approved by the Board of Trustees. (Excerpts from Westbrook Depo. [70-9] at 41-44; Excerpts from Gullett Depo. [DE 70-24] at 34-35, 114-17; Thompson Affidavit [DE 9-3] at ¶¶ 7, 9; Perkins Affidavit [DE 9-6] at ¶¶ 5, 6).

3

can result in fines and excess compensation taxes for involved directors and executives." (*See* Cooney Report [DE 73-3] at 13-16); Smith Pilot, What We Do, http://www.smithpilot.com/services/ (last visited July 26, 2018).

In short, focusing on the University's decision to have a compensation study performed to determine reasonable compensation for Dr. Taylor as Chancellor misses the point of the Motion. Even so, Dr. and Mrs. Taylor's characterization of this decision, Blount's opinions, and the University's position regarding the Disputed Agreement is inaccurate. The question at this stage is not whether the University, or even Blount, acted appropriately, but rather whether Smith's expert opinions are based on reliable principles and methods reliably applied to sufficient facts and data. *See* Fed. R. Evid. 702(a). Because they are not—for the reasons set forth below and in the Motion—Smith's expert testimony should be excluded.[2]

## II.     Dr. and Mrs. Taylor Completely Ignore Smith's Failure To Provide Justification For His Compensation Methodologies.

Dr. and Mrs. Taylor argue that the reasonableness requirement under the rules regarding excess benefit transactions "is not a scientific standard, but . . . a legal standard" and that it involves a largely subjective analysis. (DE 80 at 3-5). In fact, while the statutes and regulations regarding excess benefit transactions impose the reasonableness obligation and provide general guidelines for what should be considered in determining reasonableness, proper application of those rules in practice is mainly determined by looking at the collective experiences and generally accepted methodologies of compensation professionals or IRS officials. This makes the need to identify some justification for reasonableness determinations—e.g., academic, legal, or even past personal experiences—even more important when considering the admissibility of expert testimony in the area of non-profit executive compensation. *See Tovey v. Nike, Inc.*, No.

---

[2] Notably, Dr. and Mrs. Taylor concede in their Response that Smith should be precluded from testifying regarding legal matters outside of his area of expertise. (*See* DE 80 at 4 n.2; DE 73 at 10-11).

4

1:12-cv-448, 2014 U.S. Dist. LEXIS 93905, *19-20 (N.D. Ohio Apr. 2, 2014) (the Court cannot determine the reliability of an expert's opinions when he or she does not fully articulate the steps used in his or her analysis). As set forth in the University's Motion, however, Smith has not demonstrated the reliability of the methodologies that he employed in developing his expert opinions. (*See* DE 73 at 11-14).

Dr. and Mrs. Taylor do not dispute that Smith has not provided any support for his compensation methodologies,[3] instead misleadingly implying that Blount accepted Smith's methodologies. But that is not the case. While Blount acknowledged that IRS regulations permit consideration of past compensation and acknowledged having analyzed some limited amounts of past compensation in his prior work, he made clear that he has *never* performed an analysis of past compensation over a thirty-five-year period and that he would not attempt to do so. (Blount Amended Expert Report [DE 73-2] at 3; Exhibit 1, Excerpts from Blount Depo., at 58-59). Again, however, this is all largely irrelevant to whether *Smith* has demonstrated the reliability of *his methodologies*, which he has not. Smith could not point to any authority of any nature that sanctions performing such a comprehensive look back at compensation over thirty-five years. (*See* DE 73 at 11). Even if there is no statute or case law imposing any limit or cap on this analysis, its reliability still must be demonstrated as based on something other than the proposed expert's own *ispe dixit*—but that is all that Smith has put forward here. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999); *Tovey*, 2014 U.S. Dist. LEXIS 93905, at *24-25.

### III. Dr. and Mrs. Taylor Acknowledge That Smith Did Nothing To Assess Whether His Comparator Group Was Appropriate.

The only response that Dr. and Mrs. Taylor can muster to the University's arguments

---

[3] Likewise, although they disingenuously refer to the University's argument regarding Smith's non-compliance with the regulations regarding the rebuttable presumption as "silly on its face," Dr. and Mrs. Taylor simply ignore that Smith falsely indicated in his expert report that his reasonableness opinion was developed in accordance with 26 C.F.R. § 53.4958-6 even though it clearly was not contemporaneously obtained as required. (DE 73 at 12-13).

5

regarding Smith's comparator group is that it is the same group used by Blount in his January 2016 Report, but this simply proves the University's point. As the University has pointed out and Dr. and Mrs. Taylor essentially concede, the *only* explanation that Smith has provided for his use of this comparator group is that it is the same group Blount used previously. (*See* DE 73 at 13-15; DE 80 at 6-7). Smith did not perform *any* independent analysis of how this group of institutions compared to the University of the Cumberlands in 2015, much less over the thirty-five year period for which he performed his analysis; he did not explain his decision to remove two of the institutions from the group used in the 2016 Blount Report; and he did not explain why this comparator group, which Blount used for a determination of a reasonable salary for Dr. Taylor in the part-time position of Chancellor in 2016,[4] would also be appropriate for an analysis of whether Dr. Taylor was underpaid in the full-time position of President from 1980 to 2015. Having failed to perform any independent analysis or offer any justification for his selected comparator group, Smith's opinion is unreliable. *See Allgood v. GMC*, No. 1:02-cv-1077-DFH-TAB, 2006 U.S. Dist. LEXIS 70764, *33 (S.D. Ind. Sept. 18, 2006); *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 812-13 (N.D. Ill. 2005).

Again, Dr. and Mrs. Taylor's attempt to defend Smith's opinions by attacking Blount's is of no consequence to the University's Motion, which focuses solely on the former. Moreover, Dr. and Mrs. Taylor have not sought to exclude Blount's testimony nor otherwise claimed that his opinions are inadmissible under Federal Rule of Evidence 702 or the *Daubert* standard.[5]

---

[4] Dr. and Mrs. Taylor call the University's substantive challenge to Smith's comparator group "almost laughable" given that it was the group Blount used previously, but what is laughable is their failure to acknowledge, despite it being pointed out on numerous occasions, that Blount did not choose this group to perform an analysis of reasonable compensation for Dr. Taylor as President over a thirty-five year period

[5] Nevertheless, Blount's analysis was sound and well supported, and Dr. and Mrs. Taylor's challenges to them are incorrect and unjustified. For example, Dr. and Mrs. Taylor contend that Blount provided no justification for his opinion that reasonable compensation for Dr. Taylor as Chancellor would be less than the average of persons in similar positions at the comparator institutions, but Blount plainly noted that he chose this number taking into account Dr. Taylor's "unique experience, knowledge, and relationships" and based on the fact that, unlike the

6

### IV. Dr. and Mrs. Taylor Fail To Directly Address The Issues With The Unreliable Data Employed By Smith.

Like a broken record, Dr. and Mrs. Taylor again point back to Blount's opinions in their attempt to defend Smith's opinions,[6] but fail to directly address the actual deficiencies in the data that Smith used for his analysis. (*See* DE 73 at 18). Moreover, Dr. and Mrs. Taylor merely restate that Smith extrapolated a three percent per year increase in compensation over eighteen years and claim that this is acceptable because he says so. But, again the law does not recognize such *ipse dixit* as sufficient support for an expert's opinion. *Kumho Tire*, 526 U.S. at 157. Rather, Smith is obligated to provide some justification for his extrapolation and, having failed to do so, cannot demonstrate that his opinion is reliable. (*See* DE 73 at 18-19).

### V. Dr. and Mrs. Taylor Misunderstand The University's Arguments Regarding Smith's Flawed Statistical Methodologies.

Finally, Dr. and Mrs. Taylor either completely misunderstand the University's argument regarding Smith's statistical analysis or are feigning confusion and sarcasm to avoid having to recognize the error. Either way, Dr. and Mrs. Taylor's emphasis on Smith's use of Excel software misses the point. It is not the fact that Smith used Excel for his statistical computations that matters, but that he could not explain the equations that his computer program supposedly employed or the statistical errors in his expert report. (*See* DE 73 at 20-21). Indeed, that Smith had no idea how the statistics were actually calculated and could state only that he "put the numbers in Excel" does not inspire the confidence required for one to qualify as an expert under Federal Rule of Evidence 702. Moreover, Smith's failure to point to any facts or established methodologies that support his approach of applying various percentiles to determine how much

---

fulltime employees in the comparator group, Dr Taylor's position would be "part-time with no specific time commitment expected." (DE 73-5 at 4).

[6] And Dr. and Mrs. Taylor yet again mischaracterize Blount's opinions. For example, they point to the fact that Blount used 990 data in his expert report, but Blount actually expressly noted the issues with the 990 data and the fact that certain benefits data appears to have been unreported. (DE 80 at 7; DE 73-2 at 7, 12).

Dr. Taylor was purportedly underpaid likewise renders his opinion unreliable. (*See* DE 73 at 20).

Of course, Dr. and Mrs. Taylor again attempt to deflect from Smith's shortcomings by arguing that Blount erred by supposedly failing to account for Dr. Taylor's experience. This is, again, incorrect and irrelevant. (DE 73-2 at 7 (rather than apply different percentiles to different ranges of years of service without any reliable methodological basis, performance information, or other data to justify such an action, Blount compared Dr. Taylor the average salary of the comparator group over a seventeen year period)). Dr. and Mrs. Taylor's apparent issues with Blount's approach serve only to highlight the University's arguments regarding the inherent problem with performing such an analysis over a thirty-five-year period, which Blount noted in his report. (*Id.* at 3).

Dr. and Mrs. Taylor want to distract the Court with amusing analogies (Dr. Taylor is no Lebron James), feigned outrage, and smug sarcasm, but none of these things can take away from the fact that Smith provided no discernible justification for his methodologies, rendering his opinions inadmissible and requiring the exclusion of his testimony from trial. *See Tovey*, 2014 U.S. Dist. LEXIS 93905, at *25 (quoting *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000) ("[T]he *Daubert* court instructed district courts that their primary function as 'gatekeepers' is 'to determine whether the principles and methodology underlying the testimony itself are valid.").

## CONCLUSION

For these reasons and for the reasons set forth in its Motion, the University respectfully requests that the Court grant the Motion and exclude from presentation at trial the unreliable opinions of A.W. (Pete) Smith.

Respectfully submitted,

/s/ Barbara B. Edelman
Barbara B. Edelman
Haley Trogdlen McCauley
DINSMORE & SHOHL LLP
250 W. Main Street, Suite 1400
Lexington, KY 40507
(859) 425-1000
(859) 425-1099 (fax)
barbara.edelman@dinsmore.com
haley.mccauley@dinsmore.com

and

James D. Jordan
GUENTHER, JORDAN & PRICE, P.C.
2100 West End Avenue, Suite 1150
Nashville, TN 37203
(615) 329-2100
(615) 329-2787 (fax)
JDJordan@GJPLaw.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed this 27th day of July, 2018, using the Court's CM/ECF system, which will send notice of filing to the following:

D. Duane Cook
John M. Sosbe
Cook & Watkins, PLC
306 North Hamilton Street
Georgetown, KY 40324
*Counsel for Plaintiffs*

/s/ Barbara B. Edelman
*Counsel for Defendant*

13142517v1