UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| DR. JAMES TAYLOR and MRS. DINAH TAYLOR, | ) ) ) | Civil No: 6:16-cv-109-GFVT |
| Plaintiffs, | ) ) | |
| V. | ) ) | **MEMORANDUM OPINION** **&** |
| UNIVERSITY OF THE CUMBERLANDS, | ) ) ) | **ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Both parties seek reconsideration [R. 112; R. 113] of the Court's September 7, 2018, order granting partial summary judgment [R. 105] for the Defendant. The Plaintiffs also seek leave to amend their complaint for the third time. For the reasons stated below, Plaintiffs' motions are **DENIED** and the Defendant's motion is **DENIED**.

I.

A lengthy recitation of the facts is unnecessary. However, a brief outline is provided below. All other facts are incorporated by reference in this order.

Dr. James Taylor served as the President of the University of the Cumberlands for 35 years before retiring from that role in October 2015. [R.70 at 4.]   According to Dr. Taylor, he then assumed the role of Chancellor, a position that he alleges was created for him. [R. 81 at 4.]

While Dr. Taylor served in his new position with the University, the school retained Phillip Blount and Associates, Inc., which provided to the University an opinion on an "appropriate Total Reportable Compensation range for a Chancellor with the part-time job

description provided. . . ." [R. 81-36.] According to Phillip Blount and Associates, Inc., an appropriate Total Reportable Compensation for Dr. Taylor as Chancellor with part-time responsibilities ranges between $125,000 and $145,000. [*Id.* at 4.] This assumed a guaranteed one-year term of employment, which would be subject to renewal based on performance. [*Id.*] If, however, the term of employment was extended to two years, regardless of performance, the appropriate Total Reportable Compensation range would be adjusted to $90,000 to $108,000 per year. [*Id.*]

In late March 2016, the ad hoc sub-committee made a recommendation to the Executive Committee that, among other things, the University continue to employ Dr. Taylor "to promote the interests of the University on substantially the terms and conditions set out on the attached Exhibit to this recommendation, subject to his written acceptance of the offer." [R. 81-3.] However, the exhibit is not included in the record. Additionally, no member of the sub-committee or the Executive Committee signed the recommendation, and there is no indication whether the recommendation was approved. [*See id.*]

In early April 2016, the University, through counsel, offered Dr. Taylor a one-year contract as Chancellor with a compensation package totaling approximately $152,000. [R. 70-8; R. 81-37.] Dr. Taylor rejected the offer and his role with the University, whether as Chancellor or otherwise, was "terminated on or about April 6, 2016." [R. 70-8 at 3.] The Taylors sued approximately two months later. [R. 81 at 26; R. 1.] The Taylors allege that they are entitled to Dr. Taylor's full salary for both of their lives because the University's Board of Trustees, on three occasions, unanimously voted "to pay Dr. Taylor for his service as Chancellor the same salary or benefits he was receiving when he stepped down as President." [R. 81 at 4,9.] Therefore, the compensation package offered by the University was substantially less than the

Taylors believe they are entitled. The University responded to the suit two days later by releasing a press release with their version of the facts and circumstances. [R. 70-29.] It is this press release that forms the basis of the Taylors slander claim.

Previously, the University moved to dismiss this action for failure to state a claim alleging the Disputed Agreement lacked valid consideration. [R. 12.] The University also claimed the Disputed Agreement was unenforceable as a matter of law as it was "terminable at will . . . because it has no definite end date but instead purports to require the University to continue paying Dr. and Mrs. Taylor into perpetuity." [*Id.* at 2.] Furthermore, according to the University, the remaining claims built upon the enforceability of the Disputed Agreement and therefore should also be dismissed. [*Id.* at 10, n.4.] The Court rejected these claims and denied the University's Motion as to the Taylors' claims of breach of contract, promissory estoppel, slander, intentional infliction of emotional distress, punitive damages, and reformation. [R. 21.]

Subsequently, the Taylors moved for summary judgment alleging the University's former Chairman of the Board of Trustees, Dr. Jim Oaks, had apparent authority to bind the University to the Disputed Agreement. [R. 38.] However, the Court found there to be a genuine issue as to whether Dr. Oaks had such apparent authority and, thus, denied the Taylors' motion. [R. 69.]

The University then moved for summary judgment claiming the Disputed Agreement is unenforceable as a matter of law because it is not supported by valid consideration. [R. 70 at 22-26.] Additionally, the University argued that summary judgment was appropriate on the Taylors' claims of slander, intentional infliction of emotional distress, and reformation because there exists no evidence to support those claims. [*Id.* at 26-39.] The Court agreed with the University on each of these claims except for the Taylors claim for breach of contract. [R. 105.] The University now asks for the Court to dismiss the breach of contract claim for a third time.

[R. 123.] The Taylors, likewise, ask for reconsideration of their slander claim or in the alternative to be given leave to amend their complaint for a third time. [R. 113.]

II.

A.

Motions to alter or amend a judgment will be granted only when there "is a clear error of law, newly discovered evidence, an intervening change of law, or to prevent manifest injustice." *GenCorp, Inc. v. Am. Int'l Underwriters,* 178 F.3d 804, 834 (6th Cir. 1999). Rearguing the merits of a petitioner's claims is not an appropriate use of a motion to alter or amend. *See Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) ("A motion under Rule 59(e) is not an opportunity to re-argue a case."). Additionally, petitioners may not raise arguments under Rule 59(e) that they failed to raise prior to the district court's order. *See id.* (quoting *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992). Amending or altering a final judgment is an "extraordinary" measure and motions requesting such amendment are "sparingly granted." *Marshall v. Johnson,* 2007 WL 1175046, *2 (W.D. Ky. April 19, 2007).

B.

The University wishes the Court to reconsider the finding that Dr. Taylor's breach of contract claim can move forward. To support its request, the University presents two arguments: (i) that the Court incorrectly applied contract law in clear error; and (ii) that the Court did not adequately consider Dr. Taylor's testimony from his deposition. The University is incorrect on both points.

The University begins by arguing that no mutuality of obligation existed and therefore no valid contract was formed. [R. 112.] To support this position the University cites *Kovacs v. Freeman*, a case holding that a medical consent form did not create a valid contract when no

payment was exchanged and nothing was required of the doctor. 957 S.W.2d 251, 254 (Ky. 1997). These facts are inapposite to the Disputed Agreement. While the medical consent form considered in *Kovacs* was devoid of any "earmarks of enforceability," here evidence in the record suggests that each party agreed to certain obligations. For example, the Chair of the University, Jim Oaks, testified that it was his understanding that Dr. Taylor "would perform duties as chancellor."[1] [R. 70-3 at 50.] Chairman Oaks' belief is bolstered by Dr. Taylor's letter to Trustee Roland Mullins in which Dr. Taylor reiterated his commitment to perform the duties of Chancellor for the University. [R. 105 at 10.] The University, again, offers Dr. Taylor's deposition to defeat this inference of mutual obligations. [R. 112.] (Dr. Taylor articulating his position that "the Disputed Agreement was for 'past services . . . rendered' and confirming his belief that he did not have to perform any obligations). Dr. Taylor's statements were not previously considered by the Court because the University failed to cite to them in the record. [R. 105 at 10.] Nonetheless, his comments in the deposition do not change the result. The Court has already considered similar statements and rejected the University's position. [R. 105 at 10.] In any event, as outlined below, these statements are not enough by themselves to meet the University's burden for summary judgment.

     Dr. Taylor's belief that the future payments were for past performance, by itself, does not invalidate the presence of consideration. The Disputed Agreement, by its four corners, created mutual obligations. These obligations included: (i) Mrs. Taylor's agreement to always be an Ambassador for the University; and (ii) an agreement by both Taylors "to serve the University in

---

[1] The Universities argument that Chairman Oaks' statement taken in conjunction with Dr. Taylor's deposition shows that there was no meeting of the minds is not considered by the Court. This argument which was made for the first time in a brief on motion for reconsideration of summary judgment is far too late. Even if the Court was to consider such argument it would fail anyway. Evidence in the record shows that both Dr. Taylor and Chairman Oaks believed that Dr. Taylor would assume the Chancellor role for at least some time.

any capacity requested and agree to continue their fundraising efforts in identifying, cultivating and stewarding donors and/or potential donors of the University." The University contends, however, that these types of duties cannot support a valid contract for life. For this point the University turns to *Sources Associates*, a Sixth Circuit case applying Ohio law, which held that a contract where a party "retains an unlimited right to determine the nature or extent" of their performance is illusory. *Source Associates v. Valero Energy Corp.*, 273 Fed. Appx. 425, 428 (6th Cir. 2008); *see also Crossland v. Kentucky-Blue Grass Seed Growers' Co-op Ass'n*, 103 F.2d 565, 567 (6th Cir. 1939) (holding that the failure to specify specific acts to be performed and the duration of performance does not justify a conclusion that the contract is unilateral or lacks mutuality). But, to the extent that *Sources Associates* applies general contract law, the Taylors' case is strengthened.

In *Sources Associates*, the court considered the validity of an exclusivity contract that was allegedly granted for prior performance. 273 Fed. Appx. at 428. The court held that the acknowledgment of past consideration does not invalidate such a contract. *Id.* Indeed, an exclusivity contract is supported by new consideration regardless of any stated reasons for offering the contract. *Id.* For example, in *Sources Associates* the promisee was implicitly required to undertake its best efforts in marketing and selling the product. *Id.* Therefore, a valid contract is formed. Even in the absence of an end date or definite terms an exclusives contract is neither illusory nor too indefinite to enforce. *Sources Associates*, 273 Fed. Appx at 428.

The Taylors contract is analogous. By granting the Taylors a lifetime contract the University recognized – at least in part – the Taylors' past performance, while also locking in certain post-retirement obligations. And, like an exclusives contract, the Taylors were implicitly

required to provide their best efforts in performing their obligations.[2]  *Crossland*, 103 F.2d at 567.  Thus, the Disputed Agreement has valid consideration.  If the Taylors failed to perform under the contract the University would have had a recourse – suing for breach of contract.  The University's declaration that the contract is illusory does not make it so.

Ultimately, a University is only as good as its name.  A University builds its name by recruiting an excellent student body, developing an outstanding faculty, and hiring able administrators.  The Taylors have presented enough evidence that a reasonable jury could find that the University sought to capture both the present and future goodwill built by the Taylors by entering into a valid lifetime contract.

C.

The Taylors seek an opportunity to amend their complaint for a third time to allege defamation or in the alternative for the Court to reconsider summary judgment issued in favor of the University on the Taylors's slander claim.  The Court declines to grant either request.

As the Court outlined before, the Taylors alleged a claim of slander but failed to identify a speaker or any spoken words that would be slanderous per se. [R. 105 at 12.]  The Taylors now ask the Court to construe their slander claim broadly as a defamation claim.  To support this view, the Taylor's point to *Johnson v. City of Shelby*.  *Johnson* requires us not to dismiss a claim simply because the complaint contains an "imperfect statement of the legal theory supporting the claim asserted." 135 S. Ct. 346, 346 (2014).  And, while it is true that the Court should not focus on magic words at the pleading stage, by summary judgment the Taylors should have been able to pinpoint their legal theory.  They failed to do so.

---

[2] The Taylors contract is more finite than an exclusives contract because an exclusives contract could theoretically last for eternity while the Taylors's contract will expire upon the completion of there lives.

Unfortunately for the Taylors, even if the Court construed their slander claim broadly as a tort for defamation, the claim could not survive the summary judgment standard.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated another way, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine issue for trial. Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

When applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, the Court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id.*

Under Kentucky law, to establish a prima facie case of defamation the plaintiff is required to show proof of: (i) defamatory language, (ii) about the plaintiff, (iii) which is published, and (iv) which causes injury to reputation. *Columbia Sussex Corp., Inc. v. Hay*, 627 S.W.2d 270, 273 (Ky. Ct. App 1981); see also *Williams v. Blackwell*, 487 S.W.3d 451, 454 (2016) (holding the same) (citing *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004)). For a statement to be actionable as defamation a plaintiff must show that that the statement is sufficiently factual to be provable false, or the statement must imply underlying facts which can be provable as false. *Williams*, 487 S.W.3d at 454 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990)). The corollary to this rule is that truth is a complete defense. *Stringer*, 151 S.W.3d at 796.

The Taylors point to five statements in the University's press release that they allege are defamatory. [R. 81 at 29-31.] However, taking these statements in a light most favorable to the Taylors, none of these statements is defamatory. For the sake of clarity, the Court analyzes each of these statements in turn.

First, the Taylors point to two statements where the University states that it "has been working with Dr. Taylor for nearly a year to try to reach an agreement about his continuing role

after he chose to resign as president of the university" and that Dr. Taylor "refused to budge or negotiate" as defamatory. *Id.* at 30. However, during his deposition Dr. Taylor conceded that both statements were true. [R. 118 at 13.] Truthful statements cannot constitute defamation. *National College of Kentucky, Inc. v. WAVE Holdings, LLC*, 536 S.W.3d 218, 224 (Ky. Ct. App. 2017).

Next, the Taylors allege that three other statements are defamatory. These three statements were: (i) that the University "does not exist to unfairly benefit a single individual, no matter how long he has served the university;" (ii) that the agreement "was not disclosed to the Board . . . nor properly approved by the Board;" and (iii) that "[the University] will vigorously oppose any effort to divert its resources for the unjust enrichment of a private individual." Dr. Taylor alleges that the subtext of each of these messages is to impugn Dr. Taylor's efforts to enforce the agreement as "unfair." Each of these statements can be fairly grouped as opinions. Only if Dr. Taylor can show that one or all these statements is based on a demonstrable falsehood can he prevail. *Id.* at 222. Even when the facts are read in a light most favorable to Dr. Taylor, he cannot meet this showing.

As to the first and third statements, the University is free to espouse its opinion that any payments to Taylors are unjust even if a contract existed. A contract is not "fair" merely because a party bound themselves to it. If the Taylors' were correct, then a school would be barred from complaining about any buy-out obligations owed to a poorly performing coach. This is plainly not the case. The University's opinion, which it revealed in the press release, cannot constitute defamation.

The Taylors second opinion statement comes closer to the mark—without context. The excerpted language appears on its face to be an opinion relying on a provably false statement, i.e.

that Taylor deceptively created the Disputed Agreement. However, context is everything. The quote provided by the Taylors leaves out the key portion stating that it was merely the University's opinion that the Disputed Agreement had not been properly approved. What is more, this statement was made before discovery and *before* Dr. Taylor had provided the Disputed Agreement to the University. Given this context, this statement is a non-actionable opinion.

The Taylors cannot identify a single statement by the University that rises to the level of defamation. Therefore, any attempt to amend the complaint would be futile. For that reason, both of the Taylors' motions are **DENIED**.

### III

For the foregoing reasons, and being otherwise sufficiently advised, the Court hereby **ORDERS:**

1. Defendant's Motion for Reconsideration of Summary Judgment [R. 112] is **DENIED**; and

2. Plaintiffs' Motion to Amend the Complaint or Reconsider Summary Judgment [R. 113] is **DENIED;** and

3. Plaintiffs' Motion to reduce Defendant's time for response is **DENIED** as moot.

This the 31st day of October, 2018.



Gregory F. Van Tatenhove
United States District Judge