UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | |
|---|---|
| DR. JAMES TAYLOR <br> MRS. DINAH TAYLOR, <br><br> Plaintiffs, <br><br> v. <br><br> UNIVERSITY OF <br> THE CUMBERLANDS, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No.: 6:16-CV-109-GFVT <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANT'S OBJECTIONS TO PLAINTIFFS' DEPOSITION EXCERPTS**

Pursuant to the Court's oral ruling at the Pre-Trial Conference on January 7, 2019 ("Pre-Trial Conference") permitting the parties to restate objections to designated deposition excerpts, Defendant University of the Cumberlands (hereinafter "University"), hereby restates the following objections to the Deposition Excerpts designated by Plaintiffs Dr. James Taylor and Mrs. Dinah Taylor ("the Taylors"):

**I) David Huff's testimony should be excluded.**

Notwithstanding the Court's advice to counsel at the Pre-Trial Conference that it is disinclined to exclude David Huff's testimony on competency grounds, much of Huff's deposition testimony should still be excluded pursuant to Federal Rule of Civil Procedure 32(b). Huff's testimony was elicited almost exclusively through improper leading questions by Plaintiffs' counsel, Duane Cook ("Mr. Cook"). *See* Def. Objections to D. Huff Deposition Excerpts, attached hereto as **Exhibit A**; *see also* Huff Depo. Transcript [DE 117-8]. Despite the numerous contemporaneous objections to the improper questioning, Mr. Cook continued to ask blatantly leading questions of Huff. He never rephrased his questions to a less objectionable form

or took any other steps to mitigate the effect of his leading questions. Huff's testimony hardly demonstrates his own independent recollection.

Mr. Cook's leading questions to Huff cannot fairly be characterized as "develop[ing] the witness's testimony." Fed. R. Evid. 611(c). Instead, the deposition shows that Mr. Cook drafted the affidavit and then asked Huff to confirm that he "remembered" the underlying facts to the ghostwritten affidavit. *See, e.g.*, Huff Depo. [DE 117-8] at 48:6-14, 16:1-22. Allowing leading questions on direct examination to "develop the testimony" was not intended to permit counsel to supplant a witness's independent testimony with his own carefully drafted affidavit language.

Likewise, the Taylors cannot justify Mr. Cook's excessive leading questions by asserting that Huff was a hostile witness. Federal Rule of Evidence 611(c)(2) "ordinarily" permits leading questions of an adverse party or a "witness identified with an adverse party." Huff was arguably "identified with an adverse party" by his membership on the Board of Trustees, but his cooperation with Mr. Cook was far from ordinary. His contempt for the duty of loyalty he owed to the University as a Trustee makes him, if anything, a hostile witness *to the University*. Huff's assistance to the Taylors was extensive: he provided a favorable affidavit, he voluntarily met with the Taylors' counsel on multiple occasions to prepare his testimony, and he voluntarily submitted to a deposition. This history of cooperation shows which "side" he was really on. It was improper for Mr. Cook to ask leading questions of a witness he knew would testify favorably. Testimony elicited by such leading questions should be excluded.

Mr. Cook's leading questions and Huff's responses are clearly objectionable as leading on direct examination, and would therefore be inadmissible if Huff were present and testifying. *See* Fed. R. Civ. P. 32(b). Huff's deposition testimony is inadmissible and should be excluded.

**II) <u>Philip Blount's testimony should be excluded from the Taylors' case-in-chief.</u>**

The Taylors' Witness List indicates that they intend to introduce portions of the deposition testimony of Philip Blount ("Blount") in their case-in-chief. Blount is an expert witness who has been retained by the University on multiple occasions to provide expert opinions on reasonable executive compensation matters. At the Pre-Trial Conference, the Taylors announced for the first time that they intend to introduce Blount as a *fact witness*. This places form above substance and does not change the University's objection.

The Taylors' new assertion that they intend to introduce Blount's deposition testimony as though he was a "fact witness" is belied by the designated deposition excerpts. The Taylors' designations make clear that they intend to attack Blount's expert opinion. Putting Blount's testimony in context is instructive. In 2015, the University hired Blount to provide an expert opinion (the "Chancellor Recommendation") of a reasonable salary for the newly created Chancellor position. After initiating this lawsuit, the Taylors retained Pete Smith to provide an expert opinion attacking Blount's Chancellor Recommendation and opining that Dr. Taylor was underpaid. The University then re-retained Blount to reply to Smith's attacks and to rebut the remainder of Smith's opinion. The Taylors have chosen to not call Smith as an expert witness.

If Smith were still being called to attack Blount's Chancellor Recommendation, there would be no question that the Taylors could not call Blount as a "fact witness" to attack his Chancellor Recommendation in their case-in-chief. The fact that the Taylors are not calling their expert should not change the inquiry. It remains prejudicial and confusing to the jury to allow the Taylors to hijack the University's expert witness, especially since he will be appearing live at trial. The strong preference for live testimony in the Federal Rules easily outweighs any interest the Taylors may have in establishing, through Blount, the *fact* of the Chancellor Recommendation. The *fact* that the University obtained the Chancellor Recommendation can be

easily established through one of the Taylors' own witnesses—there is no purpose but gamesmanship to use Blount's deposition testimony in such a confusing manner.

Because Blount will appear live at trial, Rule 32 prohibits the Taylors from using his deposition testimony as substantive evidence. For these reasons, the Court should preclude the Taylors from introducing excerpts from Blount's depositions during their case-in-chief.

**III)     The University Objects to the Introduction of Jon Westbrook's Deposition.**

Jon Westbrook ("Westbrook") will also be testifying live at trial. As the University represented at the Pre-Trial Conference, Westbrook has scheduled travel that conflicts with the first three days of the new trial date, but he will be present to testify live during the trial.[1] The same presumptions in favor of live testimony discussed above with regard to Blount's testimony apply here. Moreover, that the Taylors' deposition designations are labeled "Issue Filter: Credibility of Witness" is illuminating—they seek to unfairly attack Mr. Westbrook's credibility before he is even called as a witness. *See* Pl. Witness List, Exhibit 4 [DE 97-4], at 2-25. The Taylors concede as much in their Response to the University's Motions *in Limine*: "This testimony may speak more to Mr. Westbrook's credibility than it does to whether the contract was seen by trustees." Pl. Resp. to Def. Mot. in Limine [DE 120], at 10 n.4 (referring to Westbrook Depo. 64:3-11). The strong preference for live testimony outweighs this limited interest that would be equally (if not better) served through live cross-examination.

To the extent the Court does permit Mr. Westbrook's testimony, the University objects to several specific questions, and their answers, that make the designated testimony inadmissible under Federal Rule of Civil Procedure 32(b). *See* Def. Objections to J. Westbrook Deposition Excerpts, attached hereto as **Exhibit B**.

---

[1] The undersigned counsel mistakenly advised the Court at the Pre-Trial Conference that Mr. Westbrook would be out-of-state for the first two days of trial when in fact he will be out for three days due to his pre-scheduled travel arrangements.

4

Respectfully submitted,

 /s/ Barbara B. Edelman
Barbara B. Edelman
Mary Ross Terry
August T. Johannsen
DINSMORE & SHOHL LLP
250 W. Main Street, Suite 1400
Lexington, KY 40507
(859) 425-1000
(859) 425-1099 (fax)
barbara.edelman@dinsmore.com
maryross.terry@dinsmore.com
august.johannsen@dinsmore.com

and

James D. Jordan
GUENTHER, JORDAN & PRICE, P.C.
2100 West End Avenue, Suite 1150
Nashville, TN 37203
(615) 329-2100
(615) 329-2787 (fax)
JDJordan@GJPLaw.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed this 8th day of January, 2019, using the Court's CM/ECF system, which will send notice of filing to the following:

D. Duane Cook
John M. Sosbe
Cook & Watkins, PLC
306 North Hamilton Street
Georgetown, KY 40324
*Counsel for Plaintiffs*

 /s/ Barbara B. Edelman
*Counsel for Defendant*

14383115v1

5

## EXHIBIT A:
## Defendants' Objections to Plaintiff's Designations of the Deposition of David Huff

| Objection | Designation |
|---|---|
| Page 7, Lines 6-9: Objection; Assumes facts not in evidence; Leading question | 6 Q Okay. I understood at that time<br>7 that you were not on the board of trustees for the<br>8 University. You were an honorary member at that<br>9 time? |
| Page 7, Lines 11-12: Objection; Leading question | 11 Q But you now are -- you now are<br>12 back on the board of trustees as a full member? |
| Page 7, Lines 25 – Page 8, Line 1: Objection; Leading question | 25 Q But it's been the last year or<br>                        8<br>1 so? |
| Page 10, Line 25 – Page 11, Line 5: Objection; Leading question, lacks foundation | 25 Q Okay. Now, I understand that<br>                       11<br>1 during your long service on the board of trustees<br>2 of the University, you also served on the audit<br>3 committees and the -- and other committees of the<br>4 board of directors?<br>5 A Yes. |
| Page 11, Lines 10-12: Objection; Calls for conclusion, calls for speculation, vague/misleading | 10 Q Did you ever know Dr. Taylor to<br>11 do anything as president of the University that<br>12 harmed the University? |
| Page 11, Lines 14-16: Objection; Non-responsive | 14 A He did things for the University<br>15 that cost him money. If you want me to tell what<br>16 it is, I would. |
| Page 11, Lines 22-24: Objection; Non-responsive after "No." | 22 A No. I guess you have how much he<br>23 raised for the University and what it looked like<br>24 before he got it. |
| Page 11, Line 25-Page 12, Line 1: Objection; Calls for narrative | 25 Q We do, but why don't you tell us<br>                       12<br>1 about that. |
| Page 12, Lines 11-12: Objection; Calls for opinion, leading question | 11 Q So I gather you think that<br>12 Dr. Taylor did a fine job for the University? |
| Page 12, Lines 14-17: Objection; Improper exhibit, move to strike; assumes facts not in evidence; lacks foundation, leading question | 14 MR. COOK: I'm going to ask the court<br>15 reporter, Mr. Huff, to mark as Exhibit<br>16 No. 1 the affidavit that you've signed in<br>17 this case. |
| Page 12, Lines 22-23: Objection; Leading question, lacks foundation, assumes facts not in evidence | 22 Q Now, Mr. Huff, do you remember<br>23 signing this affidavit? |
| Page 13, Lines 1-8: Objection; Argumentative, lacks foundation | 1 …to that affidavit. Mr. Huff, these are --<br>2 purport to be minutes of an October 21st, 2005<br>3 chested [sic] meeting of the University of Cumberlands<br>4 board of trustees executive session and if you'll |

6

| Objection | Designation |
|---|---|
| | 5  turn to the second page you'll see that you signed<br>6  there as secretary --<br>7  A   Right.<br>8  Q  -- of the board… |
| Page 13, Lines 22-25: Objection; Leading question | 22  Q   Okay. But you remembered that,<br>23  in fact, the board of trustees did meet to discuss<br>24  what would happen to Dr. Taylor after the -- after<br>25  his retirement? |
| Page 14, Lines 16-17: Objection; Leading question | 16  Do you remember that Mr. Hacker did make<br>17  that -- make that motion? |
| Page 14, Line 22: Objection; Non-responsive, no pending question | 22  A   I certainly did it. |
| Page 14, Line 23-Page 15, Line 2: Objection; Leading question, assumes facts not in evidence, lacks foundation | 23  Q   Okay. All right. You<br>24  wouldn't -- as secretary of the University, you --<br>25  board of trustees, you wouldn't have signed minutes<br>15<br>1  that didn't reflect exactly what happened there,<br>2  would you? |
| Page 16, Lines 5-11: Objection; Assumes facts not in evidence, compound question | 5  Q   Okay. Now, Exhibit B to your<br>6  affidavit, this is a contract dated, or an<br>7  agreement dated April 19, 2012, signed by Jim Oaks,<br>8  Chairman of the Board of Trustees, James Taylor and<br>9  Dinah Taylor. Had you seen this contract, this<br>10  agreement that's Exhibit B, before I attached it to<br>11  your affidavit and we talked about it? |
| Page 16, Lines 15-17: Objection; Leading question | 15  Q   Do you remember the contents of<br>16  this contract being talked about during the board<br>17  of directors meeting? |
| Page 16, Lines 19-21: Objection; Leading question | 19  Q   Okay. Do you remember that Jim<br>20  Oaks was authorized to sign the contract on behalf<br>21  of the board? |
| Page 17, Lines 3-5: Objection; Argumentative, calls for conclusion | 3  Q  Now, Mr. Huff, while you were<br>4  serving on the board of trustees, were you serving<br>5  as a conscientious board member? |
| Page 17, Lines 7-9: Objection; Compound question | 7  Q   Did you -- did you go to most or<br>8  all the board minutes -- meetings that you could go<br>9  to? |
| Page 17, Lines 16-18: Objection; Non-witness testifying; non-responsive | 16  A   Can you understand anything in<br>17  why I would have missed? (Directed to Mrs. Huff.)<br>18  MRS. HUFF: No. |
| Page 17, Lines 20-22: Objection; Leading question, calls for conclusion | 20  Q   But you didn't have any health<br>21  problems in 2012 that would have prevented you from<br>22  coming to this meeting? |
| Page 19, Lines 10-18: Objection; Leading question; counsel is testifying; | 10  Q   Okay. You showed me something<br>11  here. Let me see. Okay. Right. |

7

| Objection | Designation |
|---|---|
| lacks foundation | 12    Mr. Huff, you pointed out to me on the first<br>13    page of these minutes, Exhibit No. 2, in the<br>14    consideration of the minutes of the previous<br>15    meeting, that Scott Thompson moved that the minutes<br>16    be accepted. So that was consistent with what Scott<br>17    Thompson ordinarily did?<br>18    A    That's right. |
| Page 20, Lines 6-7: Objection; Leading question | 6    Do you remember that happening at that board<br>7    meeting? |
| Page 21, Lines 4-13: Objection; Misstates evidence | 4    Q    Let's see, it would be -- I think<br>5    it's   -- yeah, it's this one. At the bottom of the<br>6    page there it says, "Resolved, the office of<br>7    Chancellor be established and that Dr. James H.<br>8    Taylor be and hereby is appoint -- elected -- is<br>9    hereby elected to that office. Dr. Taylor's duties<br>10    as Chancellor shall commence upon the Board's --<br>11    adjournment of the Board -- of the Board's October<br>12    '15, Board meeting. The duties of the office of<br>13    Chancellor -- |
| Page 22, Lines 3-4: Objection; Best evidence rule | 3    Did the board in this October --<br>4    October 2014 board meeting approve that resolution? |
| Page 22, Lines 8-17: Objection; Compound question, best evidence rule | 8    Q    Well, going down the page -- on<br>9    Page 15, in the bold language there it says,<br>10    "Motion made by Scott Thompson, seconded by Dave<br>11    Huff to approve the Bylaw Amendment and the<br>12    Resolution. All approved."<br>13    Did the board approve in this meeting that<br>14    Dr. Taylor would be Chancellor of the University and<br>15    would receive the salary and benefits at the -- in<br>16    effect for Dr. Taylor on the October 2015 board<br>17    meeting? |
| Page 22, Line 20-Page 23, Line 6: Objection; Leading question, best evidence rule | 20    Q    Okay. Now taking you down -- I'm<br>21    taking you down to the bottom of Page 15. It says,<br>22    "The Benefit Package for Dr. Taylor which includes<br>23    the salary for Dr. Taylor that is in effect on<br>24    January 1, 2015, and all previously approved<br>25    insurance for Jim and Dinah Taylor, plus all other<br>                23<br>1    perks he now receives were presented to the Board.<br>2    "Motion was made by Dick Knock and seconded<br>3    by Jon Westbrook to approve the Benefit Package for<br>4    Dr. Taylor. All approved."<br>5    Do you remember that all approved that<br>6    benefit package for Dr. Taylor? |

| Objection | Designation |
|---|---|
| Page 58, Line 8-Page 59, Line 4: Objection; Leading question, compound question, confusing | 8  Q   Okay. Let me ask you about<br>9  Exhibit A to your affidavit then. The last<br>10  paragraph on that first page, it says "The<br>11  following motion was made by Mr. Bill Hacker:<br>12  "To continue the annual compensation and<br>13  applicable benefits for Dr. and Mrs. James H.<br>14  Taylor, which are in effect on the date of his<br>15  retirement as President of the University until his<br>16  death. In the event Dr. Taylor precedes his wife,<br>17  Dinah Taylor, in death then such compensation shall<br>18  -- and benefits shall go to Dinah Taylor."<br>19  I was reading from the last paragraph,<br>20  Dr. Huff. Let me ask the question this way.<br>21  Dr. Huff, do you have a recollection that the board<br>22  of directors, in a meeting in which you attended,<br>23  ever approved a contract which -- and I'm not<br>24  concerned about the dates. Do you have a<br>25  recollection of the board of directors of the<br>59<br>1  University, board of trustees of the University,<br>2  approving a contract for Dr. Taylor which would pay<br>3  him for the rest of his life the compensation he was<br>4  earning at the time of his retirement? |
| Page 59, Lines 9-12: Objection; Leading question, compound question, confusing | 9  Q   And that contract, do you<br>10  remember in that -- that he went over, the terms<br>11  that he went over included payment of Dr. Taylor's<br>12  salary for the rest of his life? |

9

## EXHIBIT B:
## Defendants' Objections to Plaintiff's Designations of the Deposition of Jon Westbrook

| Objection | Designation |
|---|---|
| Page 12, Lines 17-24: Objection; Lacks Foundation (Unclear which document is being referred to) | 17    Q.  Okay.  Taking you to Paragraph 13, which<br>18  begins at the bottom of page three, you say:<br>19       "Dr. Taylor served as President of the<br>20  University for over 30 years, and Jim Oaks served as<br>21  Chairman of the Board for over 30 years.  Because of<br>22  their long-standing service and success in these<br>23  roles, Dr. Taylor and Mr. Oaks together exercised<br>24  great influence over the Board and its actions." |
| Page 16, Line 18-Page 17, Line 14: Objection; Irrelevant/Confusing (Counsel restates his question, making previous question irrelevant) | 18    Q.  (BY MR. COOK) In any event,<br>19  Mr. Westbrook, the last sentence describes the -- in<br>20  fact, let me read the last two sentences.  I'm<br>21  sorry.<br>22       "While Mr. Oaks may believe that the<br>23  University should provide Dr. and Mrs. Taylor with a<br>24  salary and employment benefits for life, as provided<br>25  in the disputed agreement, no such arrangement was<br>             17<br>1  ever disclosed to me or, to the best of my<br>2  knowledge, approved by the Board.  Moreover, such an<br>3  arrangement would provide an excessive windfall to<br>4  Dr. and Mrs. Taylor, at the expense of the<br>5  University, its students, its employees, and its<br>6  benefactors."<br>7       I want to get into the question of what is<br>8  an excessive windfall in your mind.  I know that the<br>9  Board at one point engaged an expert to do a<br>10  survey -- I think it was Mr. Blount -- of the<br>11  salaries and benefits payable to people sort of in<br>12  Dr. Taylor's position.  Do you remember that?<br>13       MS. EDELMAN:  Object to the form.<br>14    A.  Do you want to restate your question? |
| Page 17, Line 20-Page 18, Line 8: Objection; Assumes facts not in evidence; Leading question; Calls for Legal Conclusion | 20    Q.  Okay.  Is it your position, as we sit here<br>21  today, that any salary above what Blount & Associates<br>22  suggested was appropriate would be an excessive<br>23  windfall?<br>24       MS. EDELMAN:  Object to the form,<br>25  and to the extent it calls for a legal conclusion,<br>             18<br>1  but you can answer.<br>2    A.  That is why we asked for his opinion<br>3  because we did not know what was excessive.<br>4    Q.  (BY MR. COOK) Okay. |

| Objection | Designation |
|---|---|
|  | 5  A.  And I still, to this day, do not know<br>6  what was excessive.  We were relying on the<br>7  expertise of someone who was told to us to be an<br>8  expert. |
| Page 18, Line 9-Page 19, Line 7: Objection; Irrelevant (Witness's income irrelevant to the factual dispute in this case) | 9  Q.  (BY MR. COOK) All right.  Just to try to<br>10  put this in perspective, could you tell us how much<br>11  you made from your business last year?<br>12  A.  No, sir.<br>13  MS. EDELMAN:  Object to the<br>14  question.<br>15  Q.  (BY MR. COOK) Are you saying that you<br>16  can't tell us what you made or you won't tell us<br>17  what you made?<br>18  A.  I don't see what it has to do with this.<br>19  Q.  Okay.<br>20  MR. COOK [sic]:  You don't have to answer<br>21  that.<br>22  Q.  (BY MR. COOK) All right.  Is that<br>23  something that you normally think is a private<br>24  matter?<br>25  A.  It's a private company.  I own all the<br>19<br>1  stock.  It's my business.  It's my personal life.<br>2  Yes, it's my private business.<br>3  Q.  Okay.  You think it's appropriate, then,<br>4  not to tell people and not to make available your<br>5  salary from the business?<br>6  A.  I think it is my choice.<br>7  Q.  Okay. |
| Page 37, Line 24-Page 38, Line 5: Objection; Irrelevant/Confusing (Counsel restates his question, making previous question irrelevant). | 24  Q.  Now, do you remember any discussion of<br>25  salary and benefits to be paid to Dr. Taylor once he<br>38<br>1  became Chancellor, any discussion of those salary and<br>2  benefits which occurred prior to 2014?<br>3  MS. EDELMAN:  I'm going to object to<br>4  the form.<br>5  A.  Do you want to restate your question? |
| Page 46, Lines 4-9: Objection; Argumentative; Calls for Speculation | 4  Q.  (BY MR. COOK) So if these were Lonnie<br>5  Walden's notes from the meeting, he was just mistaken<br>6  about what happened?<br>7  MS. EDELMAN:  Object to the form.<br>8  A.  You'll have to ask Lonnie Walden.  I do<br>9  not know. |
| Page 52, Line 21-Page 53, Line 22: Objection; Lacks Foundation (Unclear | 21  Q.  Okay.  I believe my first questions about<br>22  this exhibit concerned this letter. |

11

| Objection | Designation |
|---|---|
| which document is being referred to); Argumentative. | 23  Now, I want to take you to page four of<br>24  nine, the second letter in which Dr. Taylor says:<br>25  "Allow me to ramble sharing my innermost<br>53<br>1  thoughts and vulnerabilities."<br>2  Did you receive this letter?<br>3  A.  Yes, I did.<br>4  Q.  And did you read it?<br>5  A.  Yes, I did.<br>6  Q.  Let me take you to page seven of nine.<br>7  Second paragraph.  Dr. Taylor says:<br>8  "There is no need to worry about my<br>9  contract because that was taken care of years ago,<br>10 and has been repeatedly confirmed by a vote at our<br>11 various Board of Trustee meetings through the years.<br>12 I will however, need a car, credit card for which I<br>13 will turn in receipts, and an apartment for the time<br>14 I am in Williamsburg for appointment and follow-up."<br>15  Did you ask Dr. Taylor what in the world<br>16 he was talking about?<br>17  A.  No, I did not.<br>18  Q.  Okay.  You had no curiosity about what<br>19 contract he was talking about there?<br>20  A.  I was not aware of that.  I thought his<br>21 whole letter, taken as a whole, was he was stating<br>22 his opinion. |
| Page 64, Lines 3-14: Objection; Irrelevant (Dr. Cockrum's income, contract term, and family are irrelevant) | 3  Q.  Okay.  What was Dr. Cockrum to be paid in<br>4  that first year?<br>5  A.  I believe it was $200,000, but I know<br>6  it's a matter of record in his contract.<br>7  Q.  Okay.  And what was the term of that<br>8  contract?<br>9  A.  I don't know.<br>10  Q.  Okay.  What is Dr. Cockrum making now?<br>11  A.  I'm not sure.<br>12  Q.  Okay.  Does he have any other family<br>13 members working for the University?<br>14  A.  I'm not sure. |
| Page 90, Lines 6-15: Objection; Irrelevant/Confusing (Counsel agrees to restate his question then strikes it: "Let me strike that.") | 6  Q.  Did anybody ever make the determination<br>7  that it was a problem?<br>8  MS. EDELMAN:  Object to the form.<br>9  A.  Can you be more specific with your<br>10 question --<br>11  Q.  (BY MR. COOK) Sure.<br>12  A.  -- when you say anybody and so forth? |

12

| Objection | Designation |
|---|---|
| | 13    Q.  Did anybody ever -- let me strike that.<br>14    A.  I don't mean to be argumentive.  It's<br>15  just a tough question to answer. |
| Page 95, Lines 3-11: Objection; Irrelevant/Confusing/Nonresponsive; Answer to Question on Lines 8-11 not included. | 3    A.  I disagree with your statement of how you<br>4  said it.<br>5    Q.  Okay.  Why do you disagree with that<br>6  statement?<br>7    A.  I disagree with how you said it.<br>8    Q.  Did anybody on the committee do anything in<br>9  terms of reporting to the Board or investigating,<br>10  talking to anybody, other than turning this matter<br>11  over to Mr. Jordan? |
| Page 105, Lines 7-11: Objection; Irrelevant (Dr. Cockrum's income is irrelevant). | 7    Q.   (BY MR. COOK) Okay.  Did you know that<br>8  Dr. Cockrum was paid more than Dr. Taylor in 2012<br>9  and 2013?<br>10    A.  I have no idea what Dr. Taylor was being<br>11  paid. |

14383115v1

13