UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION
CIVIL ACTION NO. 6:16-CV-109-GFVT

| | | |
|---|---|---|
| DR. JAMES TAYLOR | ) | |
| MRS. DINAH TAYLOR | ) | |
| | ) | *Electronically Filed* |
| PLAINTIFFS | ) | |
| V | ) | |
| | ) | |
| UNIVERSITY OF | ) | |
| THE CUMBERLANDS | ) | |
| | ) | |
| DEFENDANT | ) | |

**PLAINTIFFS' RESPONSE REGARDING USE OF
DEPOSITIONS OF MR. BLOUNT AND MR. WESTBROOK**

Defendant has raised objections to the use in Plaintiffs' case of the deposition testimony of Mr. Huff, Mr. Blount and Mr. Westbrook (Doc. #133). Plaintiffs have already responded to the objections raised about Mr. Huff's testimony in Defendant's Motions in Limine (Doc. # 111) and Defendant's Objections to Plaintiffs' Witness List (Doc. # 108). No new objections to Mr. Huff's designations were raised in the latest pleading (Doc. #133). This brief will deal only with Defendant's objections to the use of the Blount and Westbrook depositions.

**INTRODUCTION**

One of Defendant's primary arguments is that live testimony is greatly to be preferred over the use of depositions. This argument is made at the same time Defendant either won't (Blount) or can't (Westbrook) produce the witness live for Plaintiffs' case. Defendant has known since at least August 28, 2018 (nearly 30 days prior to the originally scheduled trial) that Plaintiffs intended to use the Blount and Westbrook depositions in their case in chief. However, in an email to Defendant's counsel on August 28, 2018, counsel for Plaintiffs indicated a willingness to take Blount and Westbrook live if Defendant would agree to produce them (both live and work more

1

than 100 miles from London – Mr. Blount in Atlanta and Mr. Westbrook in Louisville). (This email is attached hereto as Exhibit A).  On December 27, 2018, counsel for Plaintiffs again inquired about the availability of Mr. Blount and Mr. Westbrook to testify live during Plaintiffs' case in chief.  The response was that the Defendant's position on Mr. Blount had not changed (that he would not be produced live for Plaintiffs' case) and that Mr. Westbrook was on vacation January 14 and 15 and could not attend the trial at all.  (This email exchange is attached hereto as Exhibit B.)  Defendant now seeks to bar altogether the testimony of Messrs. Blount and Westbrook during Plaintiffs' case.  Mr. Westbrook (as the new chairman of the Board of Trustees) was a critical decision-maker, perhaps the most critical decision maker, in the decision to breach the agreement the University had with Dr. and Mrs. Taylor.  Mr. Blount delivered the dubious report which provided at least part of the justification for the breach of the agreement.[1]

It is counsel's job to so order his presentation of the case as to make it most persuasive and efficient.  That duty is owed to the client, to the court and to the jury.  It is also counsel's job to be as well prepared as possible.  In our system, the party with the burden of proof gets to put on the evidence first.  The value of going first at trial cannot be over-emphasized.  Yet, for no good reason Defendant is trying to change the order of Plaintiffs' presentation, create obstacles to proper preparation[2], and change normal trial procedure.  That is unfair and inappropriate:

> In the usual case, the order and mode of presenting evidence and examining witnesses are determined by well-recognized legal conventions and the parties'

---

[1] A reading of the designated excerpts of Mr. Blount's deposition (attached to Plaintiffs' Witness List (Doc #. 97-1) will make clear why Plaintiffs chose not to call Mr. Smith to rebut Mr. Blount's claims.  The Blount deposition makes clear that his report to the Board of Trustees had no substance.  Mr. Blount produced the report the University's attorney told him to produce, nothing more and nothing less.

[2] Here in the week before trial, Plaintiff is being required to write this brief to deal with an issue that counsel first brought up and tried to resolve in August of last year.  And counsel still does not know when or how the testimony of critical witnesses will be allowed.  This is no way to prepare for trial.

choice of trial tactics. The court steps in only when the parties ask it for a ruling, when it wishes to clarify matters, or when something out of the ordinary warrants intervention. The court should generally defer to the parties' preferences respecting the mode of questioning and order of proof, so long as they promote the efficient ascertainment of the truth.

Even if the court is trying to save time, which is one of the objectives of *Rule 611(a)*, it must bear in mind that counsel are far more familiar with the case, and a seemingly trivial ruling may impede rather than expedite the search for truth.

4 Weinstein's Federal Evidence § 611.02.

## THE BLOUNT DEPOSITION

Defendant named Mr. Blount as an expert witness long after he produced his first report (in a letter to Mr. Jordan dated January 6, 2016 -- Plaintiffs' Trial Exhibit 89 and Defendant's Trial Exhibit 125). Defendant asserts that the expert witness designation should as a matter of fairness prevent examination of Mr. Blount about his first report during Plaintiffs' case. During his deposition counsel and Mr. Blount agreed to the convention of calling his letter to Mr. Jordan his "first report" and his report prepared for this litigation his "second report." In the deposition designation which is attached to Plaintiffs' Witness List there is only one mention of the "second report." Counsel for Defendant claims that using Mr. Blount's deposition as part of Plaintiff's case in chief is unfair, but the only reason articulated is that Defendant's counsel chose not to ask many questions during his deposition. But that was a decision counsel made, easily overcome just by producing him live for Plaintiffs' case. The greater unfairness will be to make Plaintiffs take Mr. Blount's testimony out of chronological order, after Plaintiffs have presented the rest of their case, and to deprive Plaintiffs of critical testimony (which they went to great expense to obtain) in the order that Plaintiffs' counsel has determined is most clear and efficient. If Defendant is going to present Mr. Blount live as part of its case, it can ask questions in the same order and to the same effect as they could have during Mr. Blount's deposition. Moreover, they face no greater

disadvantage than if they reserved examination of Mr. Blount to their case in chief.

There is yet another reason to deny the Defense effort to keep out the Blount deposition. Blount should not be allowed to testify as an expert in this case at all. His expert report (the "second report") is irrelevant because it was prepared solely to rebut Mr. Smith's report. Now that the Smith report will not be introduced, the Blount report is irrelevant and any time spent on it at trial by either party will be a waste of valuable trial time. Mr. Blount's Expert Witness Report is attached hereto as Exhibit C. The very first sentence of the report makes clear its substance:

> I have been asked in this case to render a rebuttal opinion on the Expert Witness Report of A.W. (Pete) Smith, Jr. dated February 1, 2018, as it related to the reasonableness of the remuneration purportedly provided to Dr. James H. Taylor, the former President of the University of the Cumberlands, through a disputed agreement dated April 19, 2012.

Mr. Smith is mentioned 14 times in Mr. Blount's report and the Blount report is entirely a rebuttal of the facts and figures contained in the Smith report. That rebuttal has no purpose and will make no sense now that the Smith report will not be before the jury.

FRCP 26(a)(2) requires that the expert witness report contain "**a complete statement of all opinions the witness will express and the basis and reasons for them.**" Mr. Blount now has no opinions to express because all of his reported opinions were about the Smith report.

## THE WESTBROOK DEPOSITION

Defendant and, presumably Mr. Westbrook, has known since at least August 28, 2018, that Plaintiffs intended to use his deposition as part of their case in chief if Mr. Westbrook was not available for trial. (See, Exhibit A hereto.) Yet, Mr. Westbrook has taken a vacation which will make him unavailable at any time during the first three days of trial. Plaintiffs certainly hope to have completed their case in chief by the end of the day Wednesday. Whether they make that schedule is not entirely within Plaintiffs' control. But even if Plaintiffs' case has not closed by

Thursday morning and Mr. Westbrook is available Thursday morning, Plaintiffs will suffer the disadvantage of not being able to take Mr. Westbrook's testimony in the order determined by counsel to be the most effective and efficient.  Moreover, use of the video deposition will very likely be more efficient than taking Mr. Westbrook live and out of turn.  During his deposition, Mr. Westbrook insisted on reading every document carefully, even documents which involved a question or two about a sentence or two.  That dead space can be edited out of the video, but not out of live testimony.  If Mr. Westbrook is able to make it to trial, then it will be a simple and efficient matter for Defendant to ask Mr. Westbrook the questions they would have asked him during Plaintiffs' case in chief.  This procedure will be no different that any defendant reserving the right to question their client during the defendant's case in chief when the plaintiff has called the defendant as part of the plaintiff's case.

Defendant's objections to questions and answers contained in the portions of the Westbrook deposition should be overruled as untimely.  The Court's Scheduling Order (Doc. #27) required those objections to be filed no later than 7 days prior to the Final Pre-Trial Conference (originally set for September 11, 2018 (approximately 3 weeks before the originally scheduled trial).  The Scheduling Order provides that:  "Any objection within any deposition which is not so raised . . . shall be deemed to be summarily overruled."  See, Doc #. 27 at Section 2(g).

Defendant's relevancy objections were addressed during the Pre-Trial Conference on January 7, 2019, and denied without prejudice.

## CONCLUSION

Defendant will not be seriously harmed by the use of the Blount and Westbrook depositions in the normal course during Plaintiff's case in chief.  Moreover, any perceived harm could have been avoided long ago as indicated by the correspondence attached as Exhibits A and B.  On the

5

other hand, Plaintiffs' trial preparation and planned presentation will be disrupted for no good reason if the depositions cannot be used.[3]

Respectfully Submitted,

/s/ D. Duane Cook
D. Duane Cook
John M. Sosbe
Cook & Watkins, PLC
306 N. Hamilton Street
Georgetown, KY 40324
duane@cookwatkins.com
john@cookwatkins.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2019, a copy of the foregoing was filed with the Clerk of Court via the Court's ECF system, which will serve notification of such filing on all counsel of record.

/s/ D. Duane Cook
*Counsel for Plaintiffs*

J:\TAYLOR TRIAL\TRIAL BRIEFS\2018.01.09.Respons re Blount and Westbrook.docx

---

[3] Here are some interesting questions. If a major part of Plaintiffs' evidence is not to be presented until Defendant's case, how will the Court deal with the inevitable motion for directed verdict when Plaintiffs rest? And will counsel even say "Plaintiffs rest" and if so, when?