UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| DR. JAMES TAYLOR and MRS. DINAH TAYLOR, ) ) ) Plaintiffs, ) ) V. ) ) UNIVERSITY OF THE ) CUMBERLANDS, ) ) Defendant. | Civil No: 6:16-cv-109-GFVT<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

I.

The Taylors filed motions in limine and objections to the University's witness and exhibit list. [R. 107; R.106.] The University did the same. [R. 111; R. 108.] At the Final Pretrial Conference the Court resolved or reserved for later determination each of these motions. The Court's ruling on each of these motions is memorialized below.

II.

A.

Rulings on the Taylors' Motions in Limine are as follows:

First Motion [R. 107 at 2] is **DENIED WITHOUT PREJUDICE**. The communications between Dr. Taylor's counsel and Ms. Sue Wake are potentially relevant to bias and are an appropriate area for questioning by the University. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 711 (6th Cir. 1975). However, the University is advised that it is currently precluded from presenting the email communications between the legal assistant and Ms. Wake.

The probative value of those emails is substantially outweighed by unfair prejudice. Fed. R. Evid. 403. If the Taylors open the door, however, these emails may become admissible at trial.

Second Motion [R. 107 at 2-3] is **DENIED WITHOUT PREJUDICE**. The factual circumstance surrounding the notarization of the Disputed Agreement is an appropriate avenue for questioning. Questions concerning the legality of Dr. Taylor signing for his spouse or the legality of the process generally will not be permitted. Fed. R. Evid. 403. Whether the document was properly notarized is irrelevant to whether the Disputed Agreement was approved by the Board of Trustees. A lengthy inquiry into notarization would be wasteful and of only limited probative value. The specific boundaries of the questioning will be reserved for trial.

Third Motion [R. 107 at 4] is **DENIED AS MOOT**. The University has agreed not to comment on the Taylors' election not to call Pete Smith as an expert witness. As discussed at the Final Pretrial Conference, the University may be able to introduce Exhibits 135 and 136 during the examination of their own expert witness. However, any questions that invoke these reports may not reference the absence or failure to call Pete Smith.

Fourth Motion [R. 107 at 4-5] is **DENIED WITHOUT PREJUDICE**. The University should not to comment on the Taylors' litigation strategy generally. However, they will be granted leeway to ask about Dinah Taylor's alleged contract for life and the failure to reduce it writing. The nature and extent of this questioning will be determined during the trial.

B.

Rulings on the University's Motions in Limine are as follows:

First and Second Motion [R. 111 at 3-6] is **DENIED WITHOUT PREJUDICE**. The Taylors will be allowed to present evidence of their past work performance. As noted in the Court's Order on Reconsideration, the Taylors allege that a lifetime contract was created, in part,

to lock in the goodwill they developed for the University through a lifetime of service. [R. 126.] The University has also stated that its defense will include an allegation that the Disputed Agreement is one that no reasonable party would bind itself to. Therefore, the Taylors must be permitted to bring forward evidence that their performance justified such a contract. Similarly, the Taylors evidence of charity to the University and good character is relevant, because it could tend to make the validity of the Disputed Agreement likelier. Regardless, the Taylors ability to present these types of evidence will not be unlimited and the Taylors are warned against presenting cumulative evidence. Fed. R. Evid. 403.

Third Motion [R. 111 at 7-9] is **DENIED WITHOUT PREJUDICE**. The Taylors have agreed that they will not present any evidence indicating the Taylors' ages or health. If a foundation exists, then the Taylors will be allowed to introduce evidence about the death of their son. But this evidence cannot be introduced to evoke the jury's sympathy. The propriety of this evidence or questioning will be determined at the time of the trial.

Fourth Motion [R. 111 at 9] is **DENIED AS MOOT**. The Taylors have agreed not to introduce evidence relating to emotional damages since they have abandoned this claim.

Fifth Motion [R. 111 at 9-10] is **DENIED WITHOUT PREJUDICE**. Again, the University alleges that the Disputed Agreement with Dr. Taylor was so unreasonable that the University could not have agreed to it. Dr. Cockrum's performance and salary are relevant to answering that defense. Indeed, Dr. Cockrum's compensation serves a useful yard stick for measuring reasonableness of the Taylors' alleged contract. The extent of the presentation of this evidence will be determined by the Court during the trial.

Sixth Motion [R. 111 at 11-12] is **DENIED WITHOUT PREJUDICE**. The Taylors are advised against referring to the Disputed Agreement as anything that signals to the jury that a

contract was formed. Therefore, the Court's preference is for the parties to refer to the alleged agreement as a Disputed Agreement or similar synonym. This language reduces the risk that the jury assumes the ultimate question.

Seventh Motion [R. 111 at 12-15] is **DENIED WITH PREJUDICE**. The Court has reviewed the video deposition for Dr. Huff and finds his testimony was competent. The Federal Rules of Evidence require the Court to look at Kentucky's rules governing competency. Fed. R. Evid. 601. And, Kentucky law assumes that Dr. Huff was competent unless he: "(i) lacked the capacity to perceive accurately the matters about which he proposes to testify; (ii) lacks the capacity to recollect facts; (iii) lacks the capacity to express himself so as to be understood [. . .] directly [. . .]; or (iv) lacks the capacity to understand the obligation of a witness to tell the truth." KRE 601. Dr. Huff's testimony elicits no concerns about any of these factors. Indeed, his testimony exhibited forthrightness about what he could remember and what he could not. To that point, he was able to accurately remember ministerial details and details relevant to this trial. The University has not met the high burden required to disqualify a witness as incompetent.

C.

Rulings on the Taylors' Objections to the University's Witness List and Testimony are as follows:

First Motion [R. 106 at 3] is **DENIED AS MOOT**. The University has agreed not to call Alice Brown.

Second and Third Motions [R. 106 at 3-4] are **DENIED**. The Taylors have not demonstrated that they are prejudiced by the delayed disclosure. Even in cases of delayed disclosure of an expert witness courts have allowed the expert to testify. *Hayas v. Geico Gen. Ins. Co.*, 2014 WL 5420004 (M.D. Fla. 2014). The potential that the Taylors would be

prejudiced by the delayed disclosure of a fact witness is low.  And, in any event, the opportunity to cross-examine Dr. Tony Hancock and Mr. Phillip Armstrong should cure any prejudice.

D.

Rulings on the University's Objections to the Taylors' Witness List and Testimony:

First Motion [R. 108 at 1] is **DENIED AS MOOT**.  The Taylors have agreed not to call Alice Brown.

Second Motion [R. 108 at 4-5] is **GRANTED**. As an initial matter, the untimely disclosure of Mrs. Siler is not fatal.  As noted above, courts have allowed experts to testify even when the opposing party failed to provide timely disclosure.  *Hayas*, 2014 WL at 5420004.  Any possible prejudice to the University caused by the delayed disclosure of a character witness is negligible, especially when weighed against the delayed disclosure of an expert witness.

However, as a rule character evidence is not allowed in civil cases. 21 Am. Jur. Proof of Facts 3d 629 (Originally published in 1993).  Three primary exceptions exist to this general prohibition when: (i) character evidence is an essential element of the claim; (ii) the civil case involves a quasi-criminal allegation against the defendant; and (iii) the evidence of good character is necessary to prove a plaintiff's claim.  *Id*.  None of these exceptions are implicated here.  First, character evidence does not form an essential element of a breach of contract claim.  Second, the Taylors are not defendants in this action.  And, in any event, the University's defense that implies unsavory behavior on the part of Dr. Taylor does not transform it into a quasi-criminal defense.  *Bolton v. Tesoro Petroleum Corp*., 871 F.2d 1266 (5th Cir. 1989).  Finally, this is not a case where the Taylors would be unable to prove their case but for character evidence.  *Re Ferrill*, 640 P.2d 489 (N.M. Ct. App. 1981) (holding character evidence was

5

necessary in a claim arise from a disputed will). The Taylors have produced testimony and documents to support their claim outside of any extrinsic character testimony.

The Court **OVERRULES** the University's objections [R. 133] to Dr. Huff's testimony.[1] *See also* Section II.B. Many of the questions that the University objects to as leading were not leading. [R. 108-1]. As the University properly notes Federal Rule of Evidence 611(c) allows leading questions on direct examination to develop facts. Nothing in the record suggests that the use of this device was unreasonable. At most, the Taylors leading questions helped to establish a rudimentary factual background. And, Dr. Huff's willingness to admit when he could not remember a fact or detail shows that the process was not coercive.

Fourth Motion is **GRANTED**. The Taylors are not permitted to introduce Philip Blount's video deposition testimony or call him to the stand during their case-in-chief. As the University's expert witness, it would be overly prejudicial, confusing, and inefficient for the Taylors to submit such evidence during their case-in-chief. Fed. R. Evid. 403. However, as an important fact witness, the Taylors will be allowed to reference Mr. Blount's deposition testimony during their opening statement. They will also be allowed to play the entire deposition during or before cross-examining Mr. Blount.

E.

Rulings on the University's Objections to the Taylors' Deposition Excerpts:

First Objection [R. 133] is **OVERRULED**. *See* Section II.D.

Second Objection [R. 133] is **SUSTAINED**. *See* Section II.D.

Third Objection [R. 133] is **SUSTAINED**. The University has identified Jon Westbrook as a defense witness. The University has also represented that he will be called to testify live

---

[1] As amended by Plaintiffs' Amendment to Witness List. [R. 137.]

during its case-in-chief. As such, Mr. Westbrook's testimony should come during the University's presentation of evidence. Therefore, the Taylors are precluded from presenting Mr. Westbrook's video deposition testimony during their case-in-chief. As with Mr. Blount, it would be overly prejudicial, confusing, and inefficient for the Taylors' to present such evidence at that time. Fed. R. Evid. 403. Of course, the Taylors' will be allowed to reference Mr. Westbrook's testimony during their opening statement if they so choose.

This the 9th day of January, 2019.

Gregory F. Van Tatenhove
United States District Judge